UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL ARRIAGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 2325 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Manuel Arriaga, seeks reversal and remand of the Commissioner's decision denying his application for Social Security benefits (doc. # 23: Pl.'s Mot. for Summ. J.). An administrative law judge ("ALJ") denied Mr. Arriaga's application for benefits after a hearing, and the Appeals Council denied his request for review of that decision, making the ALJ's decision the final decision of the Commissioner (R. 1). The Commissioner has filed a cross-motion asking the Court to affirm its decision (doc. # 26: Def.'s Mot. for Summ. J.). For the reasons that follow, we grant Mr. Arriaga's motion.

I.

At the time of his alleged onset date of November 6, 2012, Mr. Arriaga was 43 years old and a known diabetic with high cholesterol (R. 326). On October 1, 2013, Mr. Arriaga was evaluated by a psychiatrist, Laron Phillips, M.D., for the Bureau of Disability Determination Services ("DDS") (R. 359). Dr. Phillips noted Mr. Arriaga reported that he had developed depression and anxiety due to health and family problems, and his primary care physician had prescribed Lexapro for depression and anxiety and Ambien for insomnia (R. 359-60). During the

---

[1]On May 19, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 10).

examination, Mr. Arriaga was cooperative and behaved appropriately, but he was tearful and had a depressed mood and saddened affect (R. 360). Dr. Phillips concluded that Mr. Arriaga had major depressive disorder (moderate) and anxiety which resulted in "moderate impairments in social, occupational and interpersonal functioning" (*Id.*).

From May through September 2014, Mr. Arriaga's primary care physician, Dilip Patel, M.D., treated Mr. Arriaga for diabetes, hypertension, and peripheral neuropathy (nerve pain) related to his diabetes (R. 401-05). In addition, Dr. Patel prescribed Trazadone (a sedative and antidepressant) (R. 402-03). In September 2014, Mr. Arriaga began seeing a podiatrist, Ronald Hugar, M.D., who treated him for bilateral leg and foot pain and numbness with various medications, including gabapentin, Lyrica (nerve pain medication), and large doses of ibuprofen, as well as with physical therapy (R. 387-97). On October 9, 2014, Deepti Shivakumar, M.D., Mr. Arriaga's new primary care physician, restarted Mr. Arriaga's prescription for Lexapro in response to his complaints of increased depression and frequent crying spells, and increased his dosage of gabapentin to address his peripheral neuropathy (R. 407-09). On January 29, 2015, Dr. Shivakumar referred Mr. Arriaga to a psychiatrist (R. 406-07).

On March 17, 2015, Mr. Arriaga began treatment with psychiatrist, Evan Deranja, M.D., (R. 443). Dr. Deranja wrote that Mr. Arriaga's reported symptoms of "depressed mood, insomnia, anhedonia, feelings of guilt and worthlessness, poor energy, poor concentration, decreased [a]ppetite, and psychomotor retardation" met the criteria for a "major depressive episode" (*Id.*). Dr. Deranja noted that Mr. Arriaga was taking Lexapro and Ambien daily, but with no benefit (R. 445). Dr. Deranja found Mr. Arriaga had psychomotor retardation (slowing down of thought and physical movements), depressed mood with a constricted affect, and cognitive difficulties; the remainder of the examination was normal (R. 445-46). Dr. Deranja

opined Mr. Arriaga had a single major depressive episode which had been slowly worsening over the previous one to two years, as well as a cognitive disorder (R. 446). Dr. Deranja increased Mr. Arriaga's prescription for Lexapro for depression and Trazodone for insomnia, and referred him for cognitive testing (*Id.*). The following month, on April 28, 2015, Mr. Arriaga told Dr. Deranja that, overall, he felt "a little better," but that he still became anxious easily and continued to have trouble sleeping (R. 448). Mr. Arriaga's mental status examination was unchanged from the previous appointment (R. 448-49). Dr. Deranja increased Mr. Arriaga's dosage of Trazadone and maintained the same dosage of Lexapro (R. 449).

On August 18, 2015, Mr. Arriaga reported to Dr. Deranja that the use of Lexapro had not diminished his depressive symptoms, and that he continued to have insomnia despite taking Trazadone (R. 451). Mr. Arriaga's mental status exam was unchanged (R. 452). Dr. Deranja increased Mr. Arriaga's prescription for Trazadone, discontinued Lexapro, and prescribed Effexor (nerve pain medication and antidepressant) (R. 452-53). On September 28, 2015, Dr. Deranja's progress notes stated that Mr. Arriaga "[c]ontinues to meet criteria for major depressive episode" (R. 454). On Effexor, Mr. Arriaga's motivation increased "a little bit," his drive to do things "somewhat increased," and his irritability decreased "some;" however, he continued to have "depressed mood, anhedonia, low concentration, low energy, feelings of worthlessness, [and] insomnia," and he "continue[d] to struggle with cognitive symptoms" (*Id.*). Dr. Deranja also performed a cognitive assessment of Mr. Arriaga, which showed cognitive impairment (R. 455). Dr. Deranja doubled Mr. Arriaga's Effexor prescription and referred Mr. Arriaga for a neuropsychological examination (R. 456), which was not performed because it was not covered by Mr. Arriaga's insurance.

In October 2015, Dr. Deranja filled out a Mental Impairment Report for Mr. Arriaga (R. 427). Dr. Deranja diagnosed him with major depressive disorder and cognitive disorder and listed his symptoms as depressed mood, anhedonia, insomnia, impaired concentration, daily headaches, easily overwhelmed, decreased appetite, decreased energy, feelings of guilt and worthlessness, and psychomotor retardation (*Id.*). Dr. Deranga opined that these symptoms restricted Mr. Arriaga's daily activities and capacity to function in "multiple realms," and they had lasted or could be expected to last for more than 12 months (*Id.*). Dr. Deranja also stated that based on Mr. Arriaga's reports, his illness would affect his ability to sustain concentration and attention and result in the failure to complete tasks (R. 428). He opined that Mr. Arriaga had moderate limitations in activities of daily living ("ADLs") and maintaining social functioning and marked limitations on maintaining concentration, persistence or pace (R. 429). Dr. Deranja also wrote that Mr. Arriaga had specific cognitive impairments, including memory impairment, disturbance in mood, and potential loss of intellectual ability (R. 432). Dr. Deranja opined that depending on the circumstances, Mr. Arriaga's cognitive impairments could cause moderate to marked limitations in ADLs, maintaining social functioning and maintaining concentration, persistence or pace (*Id.*). He suspected that Mr. Arriaga's cognitive deficits extended beyond that which he had seen thus far (*Id.*).

## II.

On November 2, 2015, at his hearing before the ALJ, Mr. Arriaga testified that he had pain, numbness, and stiffness in his legs and feet, swelling in both ankles, sharp pains in his back, and numbness and stiffness in his hands which limited his functional abilities (R. 48-52). In addition, Mr. Arriaga testified that he had suffered from psychiatric impairments for the past two years, including depression, insomnia, headaches and anxiety attacks (R. 52, 57-58). His

4

impairments made him sad, and he cried daily (*Id.*). Mr. Arriaga also had problems with concentration and memory; his wife had to remind him to take his medication (R. 52-55).

The ALJ presented the vocational expert ("VE") with several hypotheticals, including an individual who was limited to sedentary work with frequent or constant bilateral handling, and whose mental impairments limited him to "mild activities of daily living, moderate social functioning, moderate concentration, persistence, or pace," simple routine work, occasional interaction with coworkers and supervisors, no interaction with the public, and work at a variable rate with no fast-paced production line work (R. 70-71). The VE opined that there were unskilled, sedentary employment options for this individual, but no work would be available if the individual was limited to occasional handling or had marked limitations in concentration, persistence or pace (R. 71-73).

### III.

On December 9, 2015, the ALJ issued a written decision concluding that Mr. Arriaga was not disabled from November 6, 2012 through the date of the decision (R. 32). The ALJ determined that Mr. Arriaga had the severe impairments of diabetes mellitus, peripheral neuropathy, depression, cocaine abuse, insomnia, and degenerative disc disease of the lumbar spine, none of which -- alone or in combination -- met a listed impairment (R. 18-19). The ALJ specified that Mr. Arriaga's mental impairments did not satisfy the "paragraph B" criteria because he experienced only mild restrictions in ADLs, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation of extended duration (R. 19-20). The ALJ found that Mr. Arriaga had primarily physical limitations in ADLs, but he was able to perform personal care, manage funds and shop, although he had trouble remembering where items were in the store and his wife had to write

5

down his chores for him (R. 20). Further, the ALJ noted that Mr. Arriaga was fully oriented and demonstrated adequate memory at the consultative psychological evaluation, although examinations with Dr. Deranja showed limitations in delayed recall (*Id.*).

The ALJ next determined Mr. Arriaga had a residual functional capacity ("RFC") to perform sedentary work with frequent bilateral handling, and he was limited to simple, routine tasks, no interaction with the public, occasional interaction with coworkers and supervisors, and no fast-paced production line work (R. 21). In making this determination, the ALJ reviewed Mr. Arriaga's testimony and the medical reports in the record, including Dr. Patel's and Dr. Shivakumar's decisions in 2014 to prescribe him Trazadone and Lexapro (R. 25-27). Nevertheless, the ALJ wrote that "[a]s to the claimant's mental impairments, the record is silent to any mental health treatment until March 2015," when Mr. Arriaga began treatment with Dr. Deranja (R. 27).

The ALJ reviewed Dr. Deranja's mental status examinations and cognitive testing over the next seven months, and ultimately stated that Dr. Deranja's October 2015 medical source statement "is not given great or controlling weight" (R. 28-30). The ALJ stated that "[o]verall, there is nothing in the record to support the level of severity assessed by this physician" because mental status examinations showed Mr. Arriaga "to be fully oriented with appropriate behavior and eye contact," with "goal directed thought process," "[n]o impairment of judgment or insight," and no hallucinations, delusions, or paranoia (R. 30). In addition, the ALJ found that Mr. Arriaga's depression and insomnia improved with medication, he was able to testify clearly and carefully at the hearing, and he demonstrated adequate memory, normal judgment and insight at the consultative examination (R. 29). The ALJ acknowledged Mr. Arriaga showed "some limitation in memory and concentration, as evidenced through testing with Dr. Deranja,"

but noted Mr. Arriaga never obtained the neuropsychological testing recommended by Dr. Deranja (R. 30). The ALJ concluded that she adequately accounted for Mr. Arriaga's deficiencies in the RFC, and that a significant number of jobs existed in the national economy that Mr. Arriaga could perform (R. 30-32).

## IV.

Our review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "We will uphold that decision if it is supported by substantial evidence in the record," *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). "An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion," *i.e.*, "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan*, 865 F.3d at 563.

Plaintiff raises four arguments for remand. We agree with Mr. Arriaga's first argument, that the ALJ erred in evaluating the opinion of his treating psychiatrist, Dr. Deranja (doc. # 24: Pl.'s Mem. at 9). Because we find that remand is required on this ground, we decline to reach plaintiff's additional arguments for remand.

## V.

"Under the Treating Physician Rule, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (internal citations and quotations omitted). If the ALJ does not give the treater's opinion controlling weight, the ALJ must offer "good reasons for

7

doing so" after considering the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Id.* (citing 20 C.F.R. §§ 404.1527(d)(2), 404.1527(c)).

Here, the ALJ's assessment of Dr. Deranja's opinion violated the treating physician rule. The ALJ's determination that nothing in the record supported Dr. Deranja's opinion ignored the mental health treatment Mr. Arriaga received in 2013 and 2014 from his primary care physicians. This earlier treatment was consistent with Dr. Deranja's findings, "so the ALJ should not have ignored it." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017). In addition, the ALJ ignored that Dr. Deranja's own examinations showed that despite admitting to "a little" improvement in his symptoms and showing appropriate behavior, insight and judgment, Mr. Arriaga continued to experience "depressed mood, anhedonia, low concentration, low energy, feelings of worthlessness [and] insomnia" (R. 454). It is well-settled that "[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (internal quotations omitted). The ALJ committed the same errors here as those that required remand in *Gerstner*:

- "the ALJ focused on notes about mood and affect but ignored [the treating physician's] diagnoses of depression and anxiety disorder;"
- "[t]he ALJ considered only the signs of possible improvements in [the treater's] notes and ignored the negative findings;"
- "the ALJ ignored how [the treating physician's] opinions of [the claimant's] limitations were supported by his repeated findings of depression;" and
- "the ALJ overlooked the extent to which [the treating physician's] opinions were consistent with the diagnoses and opinions of other medical sources who treated [the claimant]."

*Gerstner*, 879 F.3d at 261-62.

8

Moreover, the ALJ erred by failing to consider the relevant regulatory factors under 20 C.F.R. § 404.1527(c), and by failing to determine what weight, if any, Dr. Deranja's opinion deserved. "Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). The ALJ stated that Dr. Deranja's medical source statement "is not given great or controlling weight" (R. 30), but erred by failing to state "what value [his] assessment did merit." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). In addition, it is not apparent that the ALJ considered any of the relevant regulatory factors when deciding to not give controlling weight to Dr. Deranja's opinion. Although early in the opinion the ALJ mentioned that Dr. Deranja was Mr. Arriaga's treating psychiatrist, the ALJ failed to discuss whether she factored into her determination Dr. Deranja's specialty, his treating relationship with Mr. Arriaga, or the length of their relationship. This "inadequate evaluation of a treating physician's opinion requires remand." *Cullinan*, 878 F.3d at 605.[2]

---

[2] On remand, the ALJ may wish to order neuropsychological testing for Mr. Arriaga. In her opinion, the ALJ recognized that Mr. Arriaga had not yet received the neurocognitive testing recommended by Dr. Deranja because it was not covered by Mr. Arriaga's insurance (R. 29). Nevertheless, in explaining why she was not persuaded that Mr. Arriaga's impairments were disabling, the ALJ noted that the cognitive testing performed by Dr. Deranja had "not been further documented or supported with neuropsychological testing" (*Id.*). The ALJ may not rely on the absence of such testing to support a finding that Mr. Arriaga is not disabled if he is financially unable to obtain the testing. *See Spies v. Colvin*, 641 F. App'x 628, 634-35 (7th Cir. 2016). If the ALJ believes such testing is necessary to substantiate Dr. Deranja's findings, the ALJ should consider ordering the test. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015).

# CONCLUSION

For the foregoing reasons, we grant Mr. Arriaga's motion for remand (doc. # 23) and deny the Commissioner's motion to affirm (doc. # 26). This case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER:

Sidney I. Schenkier
**United States Magistrate Judge**

**Dated: April 24, 2018**